**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BYRON PROPHET,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HOUSTON, TEXAS, GERALD GOINES, JAMES YENCHA, RICHARD SALTER, HAROLD L. HURTT, and UNKNOWN EMPLOYEES OF THE CITY OF HOUSTON<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. ____________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff BYRON PROPHET, by his undersigned attorneys, complains of Defendants, CITY OF HOUSTON, GERALD GOINES, JAMES YENCHA, RICHARD SALTER, HAROLD L. HURTT, and UNKNOWN EMPLOYEES OF THE CITY OF HOUSTON, and states as follows:

**INTRODUCTION**

1. Mr. Prophet was wrongfully convicted and spent more than half a decade in prison after the infamous detective Gerald Goines framed him for possession and selling drugs in 2008 in Houston, Texas – a crime he did not commit.

2. His wrongful conviction was based almost entirely on Defendants' fabrication and suppression of evidence.

3. There was no legitimate evidence connecting Mr. Prophet to the crime,

or the home that was raided.

4. Defendant Officers, in general, and Defendant Goines, in particular, fabricated evidence to falsely implicate Mr. Prophet, including fabricating that a "confidential informant" had recently brought drugs in the area where Mr. Prophet was arrested.

5. In reality, there was no genuine confidential informant. Instead, Defendants used this fake informant, which they themselves engineered, as justification for the drug raid.

6. Based on the force of the fabricated evidence and the suppression of all exculpatory evidence, Mr. Prophet was charged, prosecuted, and wrongly convicted of the Elmlawn drug raid.

7. Mr. Prophet's wrongful conviction is not an isolated occurrence. Rather, his odyssey through the criminal legal system was instigated by a Houston Police Department that has and continues to devalue the lives of people of color.

8. Defendant Officers' actions were part of a pattern and practice of systemic police misconduct at the Houston Police Department, where police officers fabricated evidence, including fake informants, through tactics such as planting evidence and lying to judges to obtain search warrants.

9. Simultaneously, the actions of the Defendant Officers reflect the Houston Police Department's unwritten custom or policy to withhold exculpatory evidence from criminal defendants.

10. The policymakers of the Houston Police Department routinely failed to

properly supervise, train, and discipline its police officers, including but not limited to officers who failed to preserve and disclose exculpatory evidence, and failed to refrain from manipulative and coercive conduct, in relation to suspects and witnesses. Officers knew that the route to promotion was to close cases by any means necessary, even if it meant fabricating evidence.

11. Mr. Prophet was sentenced to 16 years in prison. He was condemned to spend his adulthood in prison for crimes he never committed.

12. The truth of what Defendant Officers had done did not remain hidden forever, and ultimately Goines and other officers' transgressions came to light. In February 2020, the Harris County District Attorney's Office began reviewing cases Defendant Goines handled between 2008 and 2019, and found 69 cases, including Mr. Prophet's, where there was evidence to suggest the criminal defendants were convicted on fabricated information.

13. Defendant Goines is now serving a 60-year prison sentence for his misconduct in another drug raid that left two people dead, and where evidence surfaced that he fabricated a confidential informant before the raid.

14. On August 21, 2024, Mr. Prophet was finally vindicated when the Texas Court of Criminal Appeals vacated his convictions. The Court reviewed the record demonstrating that Mr. Prophet's convictions were "obtained by false evidence provided by Goines." The Harris County District Attorney's Office and District Court of Harris County also recommended vacating Mr. Prophet's convictions. The next month, the Harris County District Attorney's Office dismissed the case.

15. Although Mr. Prophet will never get these lost years of his life back and therefore will never be made whole, this lawsuit seeks to redress the violation of his constitutional rights, obtain compensation for the damage Defendants inflicted upon him, and bring these injustices to light so that similar misconduct never occurs again.

## JURISDICTION AND VENUE

16. Mr. Prophet brings this action pursuant to 42 U.S.C. § 1983 and Texas law to redress Defendants' tortious conduct and the deprivation under color of law of his rights secured by the United States Constitution.

17. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to this complaint occurred in this judicial district.

## PARTIES

18. Plaintiff Bryon Prophet is 41 years old. He has 3 children. He has been worked in sanitation since his release from prison after his wrongful incarceration.

19. At all times relevant to the events described in this complaint, Defendants Gerald Goines, James Yencha, Richard Salter, and unknown employees of the City of Houston (hereinafter "Defendant Officers") acted under color of law and in the course and scope of their employment.

20. In addition, Defendant Harold L. Hurtt was at the relevant times the Chief of the Houston Police Department ("HPD"), with supervisory authority over the other Defendant Officers. These Defendants are sued in their individual capacities.

21. Defendant City of Houston is a Texas municipal corporation. The City of Houston is or was the employer of each of the Defendant Officers, who were police

officers in the Houston Police Department at all times relevant hereto. Additionally, the City of Houston is responsible for the policies and practices of the Houston Police Department.

## FACTS

### Mr. Prophet Visits His Grandmother on Elmlawn Drive

22. On the afternoon of February 27, 2008, Mr. Prophet drove his dirt bike to his grandmother's home, who lived on Elmlawn Drive in the City of Houston.

23. While visiting his grandmother, Mr. Prophet wanted to have his dirt bike repaired and went looking for his uncle, a mechanic, who also lived in the neighborhood.

24. Mr. Prophet found his uncle working on a car in front of a neighbor's house a few doors down from his grandmother's house.

25. After speaking with his uncle about repairing the dirt bike, Mr. Prophet retrieved some pliers from inside the garage of the neighbor's where his uncle was working.

26. Mr. Prophet did not enter the neighbor's house.

27. He did not attempt to enter the house.

### Defendants Raid the House Using A Fake Informant

28. When Mr. Prophet arrived on Elmlawn Drive, Defendants Goines, Yencha, and Salter were well-known for violating the civil rights of residents, and acted without regard for their constitutional rights, or the legality of their tactics.

17. Specifically, Defendant Goines had been well-known for preparing search

warrants for drug raids that falsely claimed a confidential informant had purchased drugs at the home.

29. Goines would fabricate evidence that led to drug raids, falsify reports, and "pay off" officers by falsifying overtime records of officers who participated in the drug raids.

30. The City of Houston and HPD officials were aware that Defendant Goines used these tactics and had a problematic history of violating resident's constitutional rights, but allowed him to continue operating in such fashion.

31. Before raiding the neighbor's home on the afternoon of February 27, 2008, the Defendant Officers agreed that they would take whatever steps necessary to "crack down on the neighborhood," without regard for people's constitutional rights, or the legality of their tactics.

32. The Defendant Officers further agreed to not take any steps to intervene in any way to stop legal violations, to either fail to report misconduct or exclude misconduct from reports to any supervisor, and to falsely justify any legal violations.

33. Pursuant to this agreement, Defendant Goines prepared a false application requesting a search warrant.

34. Defendant Goines wrote in the application that a confidential informant had performed a controlled drug purchase for the police at the property two days earlier.

35. In reality, there was no genuine confidential informant and no drugs were purchased.

36. Instead, Defendants Officers, including Goines, used this fake informant, which they themselves engineered, as justification to raid the house.

**Defendants Raid the Neighbor's House**

37. After Mr. Prophet retrieved the pliers for his uncle to repair his dirt bike, he heard someone yell "there goes the jump out!," or something to that effect, indicating that police were running towards them.

38. Mr. Prophet also saw police vehicles, a van, and multiple officers.

39. Multiple residents started running away from the police.

40. Since Mr. Prophet had done nothing wrong, he did not run.

41. One or more officers, including Defendant Yencha, grabbed Mr. Prophet and shoved him to the ground.

42. They searched Mr. Prophet, and he had nothing on him.

i. He had no keys

ii. He had no wallet.

iii. He had nothing in his pockets

43. After Mr. Prophet was searched and nothing was found on him, Defendant Goines approached Mr. Prophet.

44. Defendant Goines knew that Mr. Prophet had absolutely nothing to do with any crime.

**Defendants Fabricate Evidence to Frame Mr. Prophet**

45. Although Defendant Goines had already fabricated the confidential informant in the application for the search warrant, the fabricated evidence did not

stop there.

46. Pursuant to their agreement, Defendant Goines falsely stated that he observed Mr. Prophet unlock the "burglar bars" covering a door that led from the garage into the house, and that Mr. Prophet remained inside the house for about eight minutes.

47. Defendant Goines falsely claimed that they found a key on Mr. Prophet that fit the lock on the burglar bars.

48. Defendants Goines and Yencha also falsely reported that they observed Mr. Prophet's identification card on the kitchen counter.

49. The identification of Mr. Prophet as the man unlocking the door, going inside the house, and finding his identification card on the kitchen counter, were demonstrably false.

50. Despite the opportunity and ability to intervene, including when Defendant Officers were present in meetings with Goines, and when they learned about the scheme to "make" up the confidential informant, none of the Defendants took any steps to prevent Goines from using unconstitutional tactics to secure a fabricated identification of Mr. Prophet.

51. Instead, Defendants acted in accordance with pre-existing and longstanding HPD practice, custom, procedure or culture whereby:

- Officers fabricated confidential informants to justify search warrants;
- Officers failed to document evidence corroborating informants, including dates and locations and alleged meetings;

- Lieutenants were not present during the service of warrants where officers illegally forced entry;
- Search and arrest warrants were not reviewed by supervisors;
- Warrants were not signed by a district judge or magistrate judge;
- Officers failed to turn in case files;
- There were errors in the thoroughness of investigations;
- Officer failed to tag drugs before the end of a shift;
- Officers destroyed or failed to report case review sheets.

52. Simultaneously, Defendants suppressed the police reports demonstrating that the confidential informant tip was a ploy, and all other evidence of their own misconduct.

**Defendants Suppressed Evidence**

53. In their rush to frame Mr. Prophet, Defendant Officers, including Defendants Goines, Yencha, and Salter, suppressed information about the true nature of the fake confidential informant. These actors suppressed the reality of the fake informant that would have allowed Mr. Prophet and his counsel to uncover the truth about the Defendant Officers' investigation, and to develop evidence that would have led to Mr. Prophet's acquittal.

54. Defendant Officers withheld information about their fabricated informant implicating Mr. Prophet in the drug raid. For example, Defendant Officers, including Defendant Goines, knew, but failed to disclose, that he "made up" the confidential informant to help frame Mr. Prophet.

55. Defendants also withheld that Defendant Goines had provided false information, including fake informants, inculpating other innocent people in other crimes before Defendant Officers framed Mr. Prophet.

56. As another example, Defendants knew, but failed to disclose, that they never observed Mr. Prophet brandish any keys or enter the house they raided.

57. Defendants' suppression of this information deprived Mr. Prophet of the opportunity to impeach the Defendant Officers and thereby establish his innocence.

58. Instead, Defendants rushed to frame Mr. Prophet and withheld and suppressed the truth about the fabricated informant.

59. Moreover, pursuant to their agreements, Defendants, including Defendants Goines, Yencha, and Salter, suppressed, withheld, or destroyed additional exculpatory evidence. This included, but was not limited to, the agreement between Defendants Goines, Yencha, and Salter to fabricate false evidence against Mr. Prophet, including the communications between these Defendants in forming, discussing, and acting in the furtherance of the agreement, which would have served to impeach the testimony of these Defendants at Mr. Prophet's trial, as well as powerful independent evidence of his innocence.

60. Defendants never disclosed these additional pieces of exculpatory evidence to the prosecution or defense prior to Mr. Prophet's convictions in October 2008.

61. In addition, Defendant Officers including Goines, Yencha, and Salter suppressed extensive exculpatory information, including there was no evidence of Mr.

Prophet selling drugs, which would have discredited their case against Mr. Prophet and otherwise aided Mr. Prophet's defense.

62. Throughout the course of the Elmlawn drug investigation, Defendant Officers, including Defendants Goines, Yencha, and Salter, kept one another informed regarding developments in the investigation, the evidence being fabricated to falsely implicate Mr. Prophet, and the exculpatory evidence that had been suppressed, withheld, and/or destroyed.

63. Each of these Defendants agreed that they would take whatever steps necessary to implicate a suspect and develop evidence to secure a conviction for the crime, without regard for the constitutional rights of the individuals involved, the legality of their tactics, or the truth or falsity of the evidence they would develop. Pursuant to this agreement, Defendants fabricated evidence against Mr. Prophet, suppressed evidence, and otherwise conspired to frame Mr. Prophet for a crime he did not commit.

64. Each of these Defendants was, at various points, physically present with other officers while fabrication and suppression of evidence was evident and/or discussed.

65. At no point did any of these Defendants reveal the existence of the fabricated or suppressed evidence, protest or speak out, or take any steps to intervene in any way to stop the violation of Mr. Prophet's rights. The Individual Defendants failed to intervene to bring these issues to light pursuant to the agreement they had amongst themselves to frame Mr. Prophet for the Elmlawn drug investigation

regardless of his innocence.

**Houston's Policy and Practices Were the Moving Force Behind the Constitutional Violations Inflicted Against Byron Prophet**

66. The wrongful conviction of Bryon Prophet was not an isolated incident for the Houston Police Department.

67. Rather, the misconduct by the Defendant Officers, described in detail above, was undertaken pursuant to the policies and practices of the Houston Police Department.

68. At the time of the Houston Police Department's investigation into the February 2008 Elmlawn drug raid, in the period leading up to Mr. Prophet's wrongful conviction in October 2008, and for a period continuing thereafter, the Houston Police Department, including some or all of the Defendant Officers in this case, engaged in a systematic pattern of fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

69. For example, at the time of the Elmlawn drug investigation, Defendants' supervisors and policymakers within the Houston Police Department, including Chief of Police Harold Hurtt, were well aware that Defendants, including Goines, violated the civil rights of people they encountered in the course of their jobs, and acted without regard for the legality of their tactics.

70. It was well known within the HPD that Defendant Goines worked in the narcotics division where he focused not on drug kingpins, but on individuals much farther down the supply chain, many of them low-income, vulnerable residents. Over

a 30-year career, he helped send hundreds of innocent people to jail—the majority of them African-American men—through illegal tactics.

71. Throughout his career, Defendant Goines was the principal officer on more than 590 cases that led to convictions. Approximately 94% of these convictions involved Black criminal defendants, in a city where Black residents constitute approximately 22% of the population.

72. To secure convictions, the City knew that Defendant Goines and other officers would regularly prepare search warrants for drug raids, and falsely claim that a confidential informant had purchased drugs at the home. Afterwards, Defendant Goines and other officers fabricated evidence, including reports about the results of the drug raid, in order to bring charges on innocent people.

73. In many cases, Defendant Goines would have confidential informants sign forms without conducting any actual drug purchases.

74. HPD turned a blind eye and did not require Defendant Goines or any officer to corroborate that a drug purchase actually occurred.

75. Defendants Goines, Yencha, Salter, and other officers also participated in a scheme to falsify overtime records of officers involved in the drug raids.

76. As another example, Defendant Goines routinely conducted no knock warrants for firearms and consistently claimed a confidential informant had observed firearms inside the target home beforehand. But similar to the fabricated drug buys, this was falsified too.

77. On information and belief, after the warrant was executed, Defendant

Goines would make a claim for the confidential informant fund, purporting to pay a true, independent confidential informant. On further information and belief, Defendant Goines sometimes "pocketed" the money reserved for the fake informant.

78. It was not until November 2019, more than a decade after Mr. Prophet was wrongfully arrested, that Defendant Goines was finally indicted by a federal grand jury on charges that he deprived two other Houston residents of their civil rights in a similar drug raid. In that case, Defendant Goines also obtained a warrant after falsely claiming that he had set up a controlled buy of narcotics using a confidential informant, which was demonstrably false. Defendant Goines and his partner then entered the home and killed two residents, which caused a community outcry. It was only because of this public pressure, which did not exist in Mr. Prophet's case, that Defendant Goines finally admitted there was no informant.

79. Before the investigation at issue here and continuing afterwards, dozens of cases have come to light in which Houston police officers were involved in suppressing exculpatory evidence or fabricating false evidence to cause the conviction of an innocent person for serious crimes they did not commit. These cases include many in which Houston police officers used the same tactics Defendant Officers employed against Mr. Prophet, including fabricating evidence, concealing exculpatory evidence, and using other tactics to secure arrests, prosecutions, and convictions without probable cause and without regard for the targets' actual guilt or innocence.

80. For example:

a. In July 1998, Houston police officers forced their way into Pedro Oregon Navarro's apartment without a warrant, using an unregistered criminal

suspect arrested moments earlier as a fake informant. Officers shot Oregon 12 times—9 in the back—while he lay on the floor. Oregon had not fired his weapon. No drugs were found and no evidence of drug activity was produced.

b. In 1998, Josiah Sutton was arrested for sexual assault and then wrongfully convicted based on testimony from HPD, like Mr. Prophet, that he was at the crime scene. Specifically, HPD claimed that Sutton's DNA matched evidence from the crime scene. In 2004, Josiah Sutton was exonerated after serving four-and-a-half years of a 25-year sentence for a crime he did not commit. Sutton's conviction was the result of HPD contaminating evidence and untrained staff who exhibited tunnel vision without meaningful supervisory review. Sutton was only 16 at the time of his arrest.

81. In 2002, KHOU-TV conducted an investigation into HPD and revealed there was a culture of untrained staff, missing exculpatory records, contaminated evidence, and inadequate supervisory oversight of officers.

82. The seriousness of the KHOU investigation should have wrought drastic change within HPD; yet staff continued to fabricate evidence, suppress evidence, and use other illegal tactics. For example:

a. In 2003, Alfred Dewayne Brown was arrested and ultimately convicted of capital murder of an HPD officer and store clerk during a robbery and sentenced to death. In reality, Brown was three miles away at his girlfriend's apartment when the murder occurred, as evidenced by a phone call between the couple. An HPD Detective had possession of the phone records during the investigation, but did not disclose them to the prosecutors or the defense.

b. In February 2004, Defendant Goines arrested George Floyd, falsely claiming Floyd sold $10 of crack cocaine to a third party. The alleged drug money was never recovered. Nor was any third-party drug purchaser ever identified.

c. In 2006, Defendant Goines orchestrated the wrongful arrest of Reginald Jerome Christian. Goines falsely claimed Christian informed officers that there were drugs in his vehicle prior to its search. In reality, Goines fabricated this statement by Christian, as well as the drugs purportedly

found in Christian's vehicle.

83. Dozens of residents made complaints to HPD about the wrongful arrests, fabricated evidence, and suppressed evidence, but the Department turned a blind eye. Nor did the City of Houston end Defendant Goines' employment when it learned he was fabricating informants, evidence, and reports, and suppressing the truth in the years leading up to Mr. Prophet's wrongful arrest.

84. Instead, the City of Houston and the Houston Police Department routinely failed to investigate cases in which Defendant Goines and other officers recommended charging an innocent person with a serious crime with scant evidence, including false informants, and rarely has any Houston Police Officer been disciplined as a result of their misconduct in any of those cases.

85. Before and during the period in which Mr. Prophet was falsely charged with and convicted in relation to the Elmlawn drug raid, the City of Houston operated a dysfunctional disciplinary system for Houston police officers accused of serious misconduct.

86. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Further, the disciplinary apparatus had no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

87. Over his 30-year career, HPD gave Defendant Goines a mere one-day suspension for his misconduct.

88. Rather than regularly discipline officers for their misconduct, before Mr. Prophet's arrest and continuing for years afterward, municipal policy makers and

department supervisors condoned and facilitated a code of silence within the Houston Police Department. In accordance with this code, officers refused to report, were complicit in, and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

89. As a result of the City of Houston's established practices, and prior to the Elmlawn drug investigation, Defendant Officers came to believe that they could violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. The practices that enabled this belief included failing to track and identify police officers who were repeatedly accused of serious misconduct, failing to investigate cases in which the police were implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the Houston Police Department. As a result of these policies and practices of the City of Houston, members of the Houston Police Department acted with impunity when they violated the constitutional and civil rights of citizens.

90. Defendants engaged in such misconduct because they had no reason to fear that the City of Houston and its police department would ever discipline them.

91. The City of Houston and its police department also failed, in the years prior to Mr. Prophet's conviction, to provide adequate training to Houston police officers in many areas, including the following:

- The constitutional requirement to preserve and disclose exculpatory evidence, including how to identify such evidence and what steps to take

when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding;

- The need to refrain from manipulative and coercive conduct, in relation to suspects and witnesses;
- The risks of wrongful convictions and the steps police officers should take to minimize risks;
- The risks of engaging in tunnel vision during investigations;
- The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

92. The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Houston police officers as alleged in the preceding paragraph caused Mr. Prophet's wrongful conviction and his injuries.

93. The City's failure to train, supervise, and discipline its officers, including Defendants Goines, Yencha, and Salter, condones, ratifies, and sanctions the kind of misconduct that the Defendants committed against Mr. Prophet in this case. Constitutional violations such as those that occurred in this case were encouraged and facilitated as a result of the City's practices and de facto policies, as alleged above.

94. As a result, Defendants continued to engage in such misconduct. For example:

a. In April 2008, Defendant Goines and other officers arrested Steven Mallet and his brother, Otis. Goines claimed that while he was working undercover, Steven and Otis sold him crack cocaine. However, no narcotics transaction ever happened.

b. In 2008, Officer Cynthia Marino lied under oath, claiming there was a controlled drug buy when in reality, no drugs were ever purchased.

c. In 2010, Officer Carlos Lerma lied about the presence of a second officer at controlled drug buys, including forging another officer's signature.

d. In 2013, Defendant Goines arrested Joseph Posey and charged him with delivery of a controlled substance. Goines falsely claimed that Posey had sold him crack cocaine.

e. In 2014, following a drug raid, Defendant Goines filed a false police report claiming James Ybarra had drugs on him. The HPD ignored the discrepancy between Goines's written account and the absence of any recovered contraband.

f. In 2016, Defendant Goines submitted an affidavit to a magistrate judge claiming that he had sent a confidential informant to purchase narcotics from the home of Frederick Jeffery, and that the informant returned with cocaine they purchased. In reality, there was no informant that purchased any narcotics from Mr. Jeffery and the warrant was based on a false affidavit that Goines provided to the magistrate judge.

g. In 2017, Defendant Goines arrested Rachel Scott and charged her with drug possession and sale. Goines falsely claimed that Scott, who was then 32 years old, had sold him less than 1 gram of cocaine.

95. At all relevant times, members of the Houston Police Department, including Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos, and other information. This concealed material was kept in files that were maintained only at the police department and never disclosed to the participants of the criminal legal system. As a matter of widespread custom and practice, these clandestine files were withheld from the Harris District Attorney's Office and from criminal

defendants, and were routinely destroyed or hidden during or at the close of the investigation rather than being preserved as part of the official file.

96. Consistent with the municipal policy and practice described in the preceding paragraph, Defendant Officers concealed exculpatory evidence from Mr. Prophet.

97. Today, there are dozens of known cases in which Houston police officers engaged in the serious investigative misconduct described above. They engaged in such misconduct because they had no reason to fear that their supervisors would ever discipline them for doing so.

98. The City of Houston and final policymaking officials within the Houston Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite having knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Prophet's ongoing injuries.

99. The policies and practices described in the foregoing paragraphs were also approved by the City of Houston's policymakers, including Defendant Hurtt, who were deliberately indifferent to the violations of constitutional rights described herein.

100. Mr. Prophet was the victim of, and his injuries were proximately caused by, policies and practices on the part of the Houston Police Department to pursue and secure false convictions through profoundly flawed investigations and unconstitutional methods and tactics.

### Plaintiff's Conviction

101. Mr. Prophet's criminal trial was made unfair by the Defendant Officers' misconduct.

102. Without any sound evidence to tie Mr. Prophet to the Elmlawn drug raid, prosecutors had to rely on the Defendant Officers' fabrication of false evidence and suppression of exculpatory evidence to convict Mr. Prophet.

103. For crimes that Mr. Prophet did not commit, he was sentenced to 16 years in prison.

### Plaintiff's Exoneration

104. Mr. Prophet never gave up fighting to prove his innocence.

105. At the time of his arrest, Mr. Prophet had simply gone to visit his grandmother, and get his dirt bike repaired by his uncle.

106. On August 21, 2024, after years of post-conviction advocacy by Mr. Prophet, the Texas Court of Criminal Appeals vacated Mr. Prophet's wrongful convictions.

### Plaintiff's Damages

107. Plaintiff was 23 years old, in the prime of his adult life, at the time he was wrongfully arrested and then convicted of a crime he did not commit.

108. He would spend more than half a decade incarcerated for something he did not do.

109. Plaintiff's whole life was turned upside down without any warning. Defendants' misconduct caused Plaintiff unfathomable damages. For example,

because of Defendants' misconduct, Plaintiff has missed out on participating in the lives of his family and friends.

110. Plaintiff was also deprived of opportunities to engage in meaningful labor, to develop a career, and to pursue his interests and passions. For over half a decade, Plaintiff was deprived of all the basic pleasures of the human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

111. During his nearly six years of wrongful incarceration, Plaintiff was detained in harsh and dangerous conditions in maximum security prisons.

112. During his wrongful imprisonment, Plaintiff lived in constant emotional anguish, never knowing whether the truth would come out and whether he would ever be exonerated.

113. Defendants' misconduct not only caused the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty but continues to cause Plaintiff ongoing health effects to this day, including extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects.

## COUNT I
## 42 U.S.C. § 1983
## Fabrication of False Evidence in Violation of Due Process
## (Fourteenth Amendment)

114. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

115. In the manner described more fully above, the Defendants, acting as

investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by fabricating evidence, including witness statements implicating Plaintiff in crimes he did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained.

116. As described more fully above, Defendants fabricated and solicited false evidence, including statements and testimony they knew to be false, fabricated police reports and other evidence falsely implicating Plaintiff, suborned perjury, obtained Plaintiff's conviction and continued prosecution using that false evidence, and failed to correct fabricated evidence they knew to be false when it was used against Plaintiff during his criminal trial.

117. For example, as described more fully above, Defendant Officers knowingly fabricated a confidential informant to create a false tip for the Elmlawn drug raid.

118. In addition, Defendants fabricated additional evidence that is not yet known to Plaintiff.

119. Defendants' misconduct directly resulted in Plaintiff's unjust criminal prosecution and wrongful conviction, thereby denying him his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution would not and could not have been pursued.

120. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

121. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

122. The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Houston Police Department, in the manner more fully described below in Count VII.

**COUNT II**
**42 U.S.C. § 1983**
**Suppression and Withholding of Exculpatory Evidence in Violation of Due Process**
**(Fourteenth Amendment)**

123. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

124. As described more fully above, Defendants, while acting individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to due process and a fair trial.

125. In the manner described more fully above, Defendants deliberately withheld exculpatory and impeachment evidence from Plaintiff, his attorneys, and prosecutors, among others, thereby misleading and misdirecting Plaintiff's criminal

prosecution.

126. Further, the Defendants concealed additional evidence that is not yet known to Plaintiff.

127. Defendants' misconduct directly resulted in Plaintiff's unjust criminal prosecution and wrongful conviction, thereby denying him his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution would not and could not have been pursued.

128. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and with total disregard for the truth and Plaintiff's clear innocence. As a result of Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

129. The misconduct in this Count by the Defendants was undertaken pursuant to the policy and practice of the Houston Police Department, in the manner more fully described below in Count VII.

**COUNT III**
**42 U.S.C. § 1983**
**Unlawful Arrest**
**(Fourth and Fourteenth Amendments)**

130. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

131. In the manner described more fully above, the Defendants, individually,

jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured and suppressed exculpatory evidence to accuse Plaintiff of criminal activity and cause the unlawful arrest of Plaintiff, without probable cause.

132. In so doing, the Defendants caused Plaintiff to be deprived of his liberty without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

133. For example, in order to procure the warrant for Plaintiff's arrest, Defendant Officers knowingly and deliberately, or with a reckless disregard for the truth, made false statements and/or omissions that created a falsehood. Such statements and/or omissions were material, or necessary, to the finding of probable cause against Plaintiff.

134. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

135. As a direct and proximate result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

136. The misconduct in this Count by the Defendants was undertaken pursuant to the policy and practice of the Houston Police Department, in the manner more fully described below in Count VII.

**COUNT IV**
**42 U.S.C. § 1983**
**Malicious Prosecution**
**(Fourth and Fourteenth Amendment)**

137. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

138. In the manner described more fully above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured and suppressed exculpatory evidence to accuse Plaintiff of criminal activity and cause the institution and continuation of criminal proceedings against Plaintiff, without probable cause.

139. In so doing, the Defendant Officers caused Plaintiff to be deprived of his liberty without probable cause, in violation of his rights secured by the Fourth Amendment and Fourteenth Amendment.

140. The Defendant Officers initiated and continued a criminal prosecution against Plaintiff maliciously, resulting in injury.

141. Defendant Officers made, influenced, and/or participated in the decision to prosecute Plaintiff.

142. The judicial proceedings against Plaintiff were terminated in his favor when his criminal convictions were vacated and all charges against him were dismissed.

143. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's

clear innocence.

144. As a direct and proximate result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

145. The misconduct in this Count by the Defendants was undertaken pursuant to the policy and practice of the Houston Police Department, in the manner more fully described below in Count VII.

**COUNT V**
**42 U.S.C. § 1983**
**Failure to Intervene**

146. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

147. In the manner described above, during the Constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

148. As a direct and proximate result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, he sustained and continues to sustain injuries, including physical injury and sickness and resultant emotional pain and suffering.

149. These Defendant Officers had a reasonable opportunity to prevent this harm, but failed to do so.

150. The misconduct described in this Count was objectively unreasonable

and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

151. The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Houston's policy and practice in the manner more fully described above and in Count VII.

**COUNT VI**
**42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights**

152. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

153. Prior to arresting Plaintiff, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

154. In addition, before and after Plaintiff's conviction, each of the Defendants further conspired, and continues to conspire, to deprive Plaintiff of exculpatory materials to which he is lawfully entitled, and which would have led to his more-timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

155. In this manner, the Defendants, acting in concert with each other and with other unknown co-conspirators, including persons who are and who are not members of the Houston Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

156. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

157. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he sustained and continues to sustain injuries, including physical injury and sickness and resultant emotional pain and suffering.

158. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

159. The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Houston's policy and practice in the manner more fully described above.

160. The Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

161. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

162. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

163. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's

clear innocence.

164. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

165. The misconduct in this Count by the Defendants was undertaken pursuant to the police and practice of the Houston Police Department, in the manner more fully described above and in Count VII.

**COUNT VII**
**42 U.S.C. § 1983**
**Policy and Practice Claim Against the City of Houston**

166. Plaintiff incorporates each paragraph of this Complaint as if restated fully herein.

167. As described more fully herein, the City of Houston is itself liable for the violation of Plaintiff's constitutional rights.

168. Plaintiff's injuries were caused by the policies, practices, and customs of the Houston Police Department, in that employees and agents of the Houston Police Department regularly fabricated false evidence implicating criminal defendants in criminal conduct, such as by using the improper tactics described above to fabricate false witness statements; failed to disclose exculpatory evidence to criminal defendants; pursued wrongful convictions through profoundly flawed investigations; and otherwise violated due process in a similar manner that alleged herein.

169. The above-described widespread practices and customs, which were so

well-settled as to constitute the de facto policy of the Houston Police Department, were allowed to exist because municipal policymakers with authority over the same, including but not limited to Chief Hurtt, either tolerated or acquiesced to the problem, thereby effectively ratifying it. Defendants' tactics were supported by high-ranking supervisors.

170. Furthermore, the above-described widespread practices were allowed to flourish because the Houston Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who fabricated false evidence and witness testimony, withheld material evidence, and pursued wrongful convictions.

171. The constitutional violations described in this complaint were also undertaken pursuant to the policies and practices of the Houston Police Department in that the constitutional violations against Mr. Prophet were committed with the knowledge or approval of persons with final policymaking authority for the City of Houston and the Houston Police Department, or were actually committed by persons with such final policymaking authority.

172. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Houston and the Houston Police Department, including but not limited to Defendants Goines, Yencha, and Salter, who acted pursuant to one of more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

173. The policies, practices, and customs set forth above were the moving

force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer grievous and permanent injuries and damages set forth above.

**COUNT VIII**
**Supervisory Liability**

174. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

175. The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, including but not limited to Defendant Hurtt, who served as Chief of the Houston Police Department at the relevant times, such that these officers personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

176. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

177. As a direct and proximate result of this misconduct, Plaintiff sustained and continues to sustain injuries, including physical injury and sickness and resultant emotional pain and suffering.

178. Absent knowing participation by the command personnel responsible for supervising the Defendant Officers, the misconduct alleged in this Complaint could not have occurred.

179. The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Houston's policy and practice in the manner more fully described above.

180. In the manner described more fully above, Defendant Officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

181. In so doing, these Defendant Officers caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

182. Plaintiff's criminal prosecution was terminated in his favor, in a manner indicative of innocence.

183. Defendants' actions were taken under color of law and within the scope of their employment.

184. As a result of Defendant Officers' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT VIV**
**State Law Claim**
**Malicious Prosecution**

185. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

186. In the manner described more fully above, Defendant Officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

187. In so doing, the Defendant Officers caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

188. Plaintiff's criminal prosecution was terminated in his favor, in a manner indicative of innocence.

189. Defendant Officers' actions were taken under color of law and within the scope of their employment.

190. As a result of Defendant Officers' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT X**
**State Law Claim**
**Intentional Infliction of Emotional Distress**

191. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

192. Defendant Officers' actions, omissions, and conduct, as set forth above, were extreme and outrageous.

193. These actions were rooted in an abuse of power and authority and were

undertaken with the intent to cause, or with reckless disregard for the probability that they would cause, Plaintiff severe emotional distress, as more fully alleged above.

194. As a direct and proximate result of the Defendants, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

**COUNT XI**
**State Law Claim**
**Civil Conspiracy**

195. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

196. As described more fully in the preceding paragraphs, Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.

197. In furtherance of the conspiracy, Defendant Officers committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

198. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

199. As a direct and proximate result of this misconduct, Plaintiff sustained and continues to sustain injuries, including physical injury and sickness and

resultant severe emotional pain and suffering.

**COUNT XII**
**State Law Claim**
***Respondeat Superior***

200. Plaintiff incorporates each paragraph of this pleading as if restated fully herein.

201. While committing the misconduct alleged in the preceding paragraphs, Defendants Goines, Yencha, and Salter, were employees, members, and agents of the City of Houston, acting at all relevant times within the scope of their employment.

202. Defendant City of Houston is liable as principal for all state law torts committed by its agents.

**COUNT XIII**
**State Law Claim**
**Indemnification**

203. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

204. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Houston Police Department, acting at all relevant times within the scope of their employment and under color of law.

WHEREFORE, Plaintiff Bryon Prophet respectfully requests that this Court enter a judgment in his favor and against Defendants the City of Houston; and Goines, Yencha, Salter, Hurtt, and Unknown Employees of the City of Houston, awarding compensatory damages, attorneys' fees, costs, and pre- and post-judgment

interest against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the Defendant Officers, and any other relief that this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Byron Prophet hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Dated: August 19, 2026

Respectfully submitted,

**BYRON PROPHET**

By: /s/Thomas M. Hanson
*One of Plaintiff's Attorneys*

Jonathan Loevy*, Illinois Bar No. 6218254
jon@loevy.com
Thomas M. Hanson, Texas Bar No. 24068703
hanson@loevy.com
Tom Kayes*, Illinois Bar No. 6315461
kayes@loevy.com
Quinn K. Rallins*, Illinois Bar No. 6339556
rallins@loevy.com
**pro hac vice motion forthcoming*

LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900